# In the United States Court of Federal Claims

|  |  |
|---|---|
| **WYOMING TRUST COMPANY**, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant.* | No. 23-1341<br>(Filed: February 26, 2024)<br><br>Not for Publication |

*Reza Dibadj* and *Douglas Park*, Park & Dibadj, LLP, Menlo Park, Calif., for Plaintiff.

*Andrew R. Tardiff* and *Jennifer A. Sundook*, Trial Attorneys, *Todd Kim,* Assistant Attorney General, Environmental & Natural Resources Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI,** *Judge*.

Plaintiffs Wyoming Trust Company, Nancy Butcher, Kurt Hall, and Hall-Atlas, LLC seek just compensation under the Fifth Amendment for a regulatory taking affecting Plaintiffs' right to mine certain coal deposits on their property in Campbell County, Wyoming. Compl. at 1-2 (ECF 1).[1] Before the Court is the Government's Motion to Dismiss pursuant to Court of Federal Claims Rules 12(b)(1) and (6). ECF 5. The motion is fully briefed. Def.'s Mot. to Dismiss (ECF 5); Pls.' Resp. (ECF 8); Def.'s Reply (ECF 11). The Government asserts, among other things, that dismissal is warranted because Plaintiffs' claim is barred by the Tucker Act's statute of limitations. ECF 5 at 10. The Court agrees. For the following reasons, the Government's Motion to Dismiss pursuant to Rule 12(b)(1) is **GRANTED**. The Court declines to reach the Government's Motion to Dismiss pursuant to Rule 12(b)(6), which is **DENIED AS MOOT**.

---

[1] Although the Court ordinarily cites individual paragraph numbers in a complaint, Plaintiffs' Complaint restarts paragraph numbers for each section. For clarity, the Court cites to page numbers instead.

## BACKGROUND[2]

Plaintiffs' takings claim arises from congressional legislation affecting their right to mine certain coal deposits on Hall Ranch, located in Northeastern Wyoming about twenty miles north of Gillette, Wyoming. Compl. at 4-5. Plaintiffs Wyoming Trust Company, Nancy Butcher, and Kurt Hall are trustees of various trusts, referred to as "the Hall Family Trusts," which hold the rights to the Hall Ranch and fee coal located therein. *Id.* at 3. Plaintiff Hall-Atlas, LLC, is the lessee and agent of the Hall Family Trusts. *Id.* The Hall Ranch is nearly 12,000 acres in size and contains over 138 million tons of coal. *Id.* at 3-4. The Hall coal rights were originally leased in 1967 by Exxon Coal Resources. *Id.* at 4.

In 1977, Congress passed the Surface Mining Control and Reclamation Act (SMCRA), Pub. L. No. 95-87, 91 Stat. 445 (1977) (codified at 30 U.S.C. §§ 1201, *et seq.*), to provide "effective and reasonable regulation of surface coal mining operations by the States and by the Federal Government ... [as] an appropriate and necessary means to minimize so far as practicable the adverse social, economic, and environmental effects of such mining operations." *Id.* § 1201(e). Relevant here, the SMCRA substantially restricts surface mining within alluvial valley floors (AVFs), *id.* § 1260(b)(5), which are defined as "the unconsolidated stream laid deposits holding streams where water availability is sufficient for subirrigation or flood irrigation agricultural activities." *Id.* § 1291(1). The SMCRA requires that a proposed surface coal mining operation not "interrupt, discontinue, or preclude farming on [AVFs] that are irrigated or naturally subirrigated" or "materially damage the quantity or quality of water in surface or underground water systems that supply these [AVFs]." *Id.* § 1260(b)(5).

Although the SMCRA sets national statutory minimum standards, it permits the states to assume "exclusive jurisdiction" over surface mining in their respective territories upon approval by the Secretary of the Interior. 30 U.S.C. § 1253(a). This exclusive state regulatory authority is commonly referred to as "primacy." To achieve primacy, a state must devise a program that complies with the minimum national standards set forth by the SMCRA. *Bragg v. West Virginia Coal Ass'n,* 248 F.3d 275, 288 (4th Cir. 2001). Where a state has achieved primacy, the state's laws and regulations implementing the program become operative for the regulation of surface coal mining, and the state officials administer the program, giving the state *exclusive* jurisdiction over the regulation of coal mining within its borders. *Id.*

The State of Wyoming obtained primacy over its own regulatory program in November 1980. 30 C.F.R. § 950.10. Wyoming's regulatory authority for this program is the Wyoming Department of Environmental Quality (WDEQ). *Whitney Benefits, Inc. v. United States*, 752 F.2d 1554, 1555 (Fed. Cir. 1985). A state mining permit from WDEQ is required to conduct surface coal mining and reclamation operations. *See* 30 U.S.C. § 1256. WDEQ considers applications for surface mining permits, receives public comment,

---

[2] For purposes of the Motion to Dismiss pursuant to Rule 12(b)(1), the Court accepts as true all undisputed facts asserted in the Plaintiffs' complaint.

issues permits and proposed mining plans under a regulatory program approved by the Office of Surface Mining Reclamation and Enforcement. 30 C.F.R. §§ 950.10, 950.15.

To remedy the loss of mining rights, the SMCRA enabled landowners who already made substantial legal and financial commitments to coal property before the passage of SMCRA to exchange that property for federal coal holdings. 30 U.S.C. § 1260(b)(5). Coal exchanges are facilitated by the Secretary of the Interior, through the Bureau of Land Management (BLM). *Nance v. United States,* 92 Fed. Cl. 41, 43 (2010).

Exxon initially pursued an exchange of the Hall Ranch coal and sought a determination from WDEQ as to whether the Hall Ranch coal fell within the scope of the SMCRA. Compl. at 5. In 1985, WDEQ determined that the Hall Coal met the AFV definition and that 1,634 acres of the Hall Ranch were in an AVF. *Id.* at 5-6. Exxon soon abandoned the pursuit of an exchange, "given the reality that attempts by other parties to effectuate AVF coal exchanges had been mired in significant delay and litigation." *Id.* at 5.

Due to limited "financial resources and professional expertise," the Hall family did not continue to pursue an exchange on their own. *Id.* They waited until May 2010—several decades later—before applying to BLM to move forward with the exchange. *Id.* Although, BLM initially seemed receptive to continuing the process, the negotiations fell apart over the valuation of the AVF coal (which BLM valued at $0 in one analysis). *Id.* at 6-32. Plaintiffs allege that BLM committed various actions from 2010 to 2022, during the renewed exchange negotiation, demonstrating "bad faith, arbitrary and capricious behavior, and violations of the legal and regulatory framework governing exchanges." *Id.* at 17. With no agreement in sight, Plaintiffs filed suit in this Court on August 16, 2023, seeking just compensation under the Fifth Amendment and 28 U.S.C. § 1481 (the Tucker Act). *Id.* at 1-2. On October 16, 2023, the Government filed the instant Motion to Dismiss, arguing, among other things, that Plaintiffs' claim is barred by the Tucker Act's statute of limitations.

## LEGAL STANDARD

Defendant moves to dismiss pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims.[3] Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction. This Court's jurisdiction is dependent on an unequivocal waiver of sovereign immunity by the United States. *United States v. Testan*, 424 U.S. 392, 399 (1976). The plaintiff bears the burden to demonstrate that jurisdiction is proper by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When considering a motion to dismiss under Rule 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed.

---

[3] Court of Federal Claims Rule 12(b)(1) is the same as Federal Rule of Civil Procedure 12(b)(1). *Compare* RCFC 12(b)(1) *with* Fed. R. Civ. P. 12(b)(1).

Cir. 2011). If the Court determines that it lacks subject-matter jurisdiction, it must dismiss the action. Rule 12(h)(3); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

## DISCUSSION

The primary issue is whether Plaintiffs' claim is timely. Under the Tucker Act, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Section 2501 "is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived." *Hart v. United States*, 910 F.2d 815, 818-19 (Fed. Cir. 1990).[4] Nor may the Court consider whether certain equitable considerations warrant extending the limitations period under Section 2501. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008).

A takings claim accrues "when all the events have occurred which fix the liability of the Government." *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1355 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2006). A regulatory takings claim will not accrue until the claim is ripe. *Royal Manor, Ltd. v. United States,* 69 Fed. Cl. 58, 61 (2005). A regulatory takings claim is ripe (and thus accrues) when "the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 191 (1985), *rev'd on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019).[5] However, the Federal Circuit has previously held that administrative action is not necessary where it is clear from "obvious physical facts about the property" at issue that surface mining of coal is prohibited by the SMCRA. *Whitney Benefits, Inc. v. United States*, 926 F.2d 1169, 1173 (Fed. Cir. 1991).

Here, it makes no difference whether Plaintiffs' claim accrued on enactment of the SMCRA or, instead, when WDEQ applied the SMCRA to the Hall Ranch. Even if the Court assumes, for the sake of argument, that administrative action was necessary for Plaintiffs' claim to ripen (and thus accrue), this suit remains time barred. Plaintiffs admit that sometime during 1985, WDEQ determined that 1,634 acres of the Hall Ranch fell within prohibited AVF areas and that the Hall Coal fell within the AFV definition. Compl. at 5-6. At that point, there was no question about how the SMCRA applied to the Hall

---

[4] In the last twenty years, the Supreme Court has repeatedly admonished courts for attaching the jurisdictional label to minor procedural requirements that can be characterized as "claim-processing rules." *See Kontrick v. Ryan,* 540 U.S. 443, 456 (2004). However, the Supreme Court has maintained that Section 2501 is "more absolute" in nature, suggesting that it remains a prerequisite for Tucker Act jurisdiction. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008). As such, this Court has continued to use Rule 12(b)(1) to resolve questions of timeliness under the Tucker Act. *See, e.g., Henderson v. United States*, 152 Fed. Cl. 460, 465 (2021).

[5] The Supreme Court in *Knick* explicitly stated that *Williamson's* finality requirement was not under review. *Knick*, 139 S. Ct. at 2169 ("Knick does not question the validity of [*Williamson's*] finality requirement, which is not at issue here.").

Ranch. *See Pakdel v. City & Cnty. of S.F., Cal.*, 141 S. Ct. 2226, 2230 (2021) (explaining that finality is achieved when "there [is] no question … about how the 'regulations at issue apply to the particular land in question.'" (quoting *Suitum v. Tahoe Reg.'l Plan. Agency*, 520 U.S. 725, 739 (1997))). Because Plaintiffs filed their claim in 2023—nearly 40 years after the agency's decision—their claim is barred by the Tucker Act's six-year statute of limitations.

Resisting this reasoning, Plaintiffs contend that their takings claim did not accrue until August 2017, when the exchange negotiation proved unsuccessful. ECF 8 at 2, 9-12. Although passage of the SMCRA may have affected a taking, Plaintiffs argue, a constitutional violation did not occur until Plaintiffs failed to receive just compensation for that taking in the form of an equitable exchange. *Id.* at 9.

This argument is conceptually flawed and runs directly against the Supreme Court's recent decision in *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019). There, the Supreme Court held that a takings claim "arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Id.* at 2170. "[N]o matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it." *Id.* The Supreme Court concluded that "[a] later payment of compensation may remedy the constitutional violation that occurred at the time of the taking, but that does not mean the violation never took place." *Id.* at 2172.

More to the point, in *Whitney Benefits,* the Federal Circuit rejected Plaintiff's exact argument. 752 F.2d at 1560. There, as here, the parties disputed whether a Tucker Act claim may start to accrue before "the 'exchange mechanism' has failed to accomplish its end as actually applied." *Id.* at 1556. The Federal Circuit held that the exchange transaction is merely "a method of ascertaining and paying just compensation for a taking, which may be negotiated and agreed upon either before or after the taking itself." *Id.* at 1560. The Federal Circuit concluded that it would be "a misconstruction of the governing statute" to hold that "pursuit of an exchange transaction must occur and be unsuccessful before a taking can occur." *Id*. In short, *Knick* and *Whitney Benefits* establish that pursuit of a coal exchange or any other post-taking remedy does not delay the accrual date of Plaintiffs' takings claim.

Plaintiffs take one final stand, arguing that the Government's pattern of alleged fraud and concealment from 2010 to 2022, during the exchange negotiation, "makes a strong case for equitable tolling" until at least August 17, 2017. ECF 8 at 13. Plaintiffs cite *Hopland Band of Pomo Indians v. United States,* which holds that the Tucker Act's statute of limitations may be tolled in narrow circumstances where "the government fraudulently or deliberately conceals material facts relevant to a plaintiff's claim so that the plaintiff was unaware of their existence and could not have discovered the basis of his claim." 855 F.2d 1573, 1577 (Fed. Cir. 1988).

5

That may be, but as discussed above, the basis for Plaintiffs' takings claim was clearly established by 1985. Although Plaintiffs allege a plethora of "independent and distinct events or wrongs" by the Government that might toll the statute of limitations, those actions occurred after the exchange negation was reignited in 2010, more than three decades after the SMCRA was enacted and more than two decades after WDEQ made its AVF determination. Compl. at 5-30.[6] These alleged actions simply did not and could not have affected Plaintiffs' awareness of a valid takings claim, which had been established decades earlier.

The Government advances two more jurisdictional defects in Plaintiffs' claim.[7] However, having found that Plaintiffs' claim is untimely under 28 U.S.C. § 2501, the Court need not address them. Likewise, the Court declines to consider the Government's Motion to Dismiss pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Government's Motion to Dismiss pursuant to Rule 12(b)(1) (ECF 5). The Government's Motion to Dismiss pursuant to Rule 12(b)(6) (ECF 5) is **DENIED AS MOOT**. The Clerk of Court is directed to enter judgment in favor of the Government.

**IT IS SO ORDERED.**

PHILIP S. HADJI
Judge

---

[6] In pointing out this plethora of "independent and distinct events or wrongs," Plaintiffs themselves cite to paragraphs 15 to 92 of pages 5 to 30 of the Complaint. Those paragraphs all describe events that occurred during or after 2010.

[7] The Government further argues that jurisdiction is lacking because (1) there are two other pending suits in district courts as to the same claim, and (2) the state of Wyoming, not the United States, was responsible for the taking at issue. ECF 5 at 13, 18.